**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**AKRON DIVISION**

| | |
|---|---|
| DANIEL BACHE, *et al.*, :<br>on behalf of himself and all others :<br>similarly situated, :<br>   :<br>        Plaintiffs, :<br>    v.   :<br>         :<br>SPECIAL COUNSEL, INC., :<br>   :<br>    -and-  :<br>   :<br>INNOVATIVE EMERGENCY :<br>MANAGEMENT, INC., :<br>   :<br>        Defendants. : | CASE NO. 5:20-cv-2585<br><br>JUDGE<br><br>MAGISTRATE JUDGE |

**COLLECTIVE AND CLASS ACTION COMPLAINT**

1.     Plaintiff Daniel Bache ("Named Plaintiff"), on behalf of himself and all similarly situated individuals ("Putative Op-in Plaintiffs"), brings this collective and class action against Defendant Special Counsel, Inc., ("Defendant SC") and Defendant Innovative Emergency Management, Inc., ("Defendant IEM") (collectively "Defendants") for monetary, declaratory, and injunctive relief due to their willful failure to compensate employees for all hours worked and the correct amount of overtime pay in violation of the Federal Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§201, *et seq.*, The Ohio Minimum Fair Wage Standards Act ["the Ohio Wage Act"], O.R.C. §§4111.01.*, 4111.03 and 4111.10*, and the Ohio Prompt Pay Act ["the OPPA"] committed by only paying non-exempt employees in the Attorney Advisor or Case Manager position(s) for the scheduled time they worked and not for all hours they worked in a workweek; in addition, not paying the appropriate overtime rate at one and one-half (1 ½) times their regular rate for hours worked in excess of forty (40) in a given workweek.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1332 (diversity), 28 U.S.C. §§1331 (federal question) and 1337(a) (statutory regulation of commerce) and 29 U.S.C. §216(b).

3. This Court has supplemental jurisdiction over Plaintiffs' Ohio Wage Act and OPPA claims pursuant to 28 U.S.C. §1367.

4. Venue in this Court is proper pursuant to 28 U.S.C. §1391 and N.D. Ohio Civ. R. 82.1(b) because Plaintiffs employed by Defendant in Ohio performed their job duties for Defendant in the Akron Division where Defendant regularly conducts business.

## PARTIES

5. Plaintiff Daniel Bache ("Plaintiff Bache" or "Named Plaintiff") is an adult resident of Akron, Ohio (Summit County). Beginning on approximately June 4, 2020 up to the present, Plaintiff Bache worked for Defendants as an Attorney Advisor—while performing the duties of a Loan Officer and sometimes being referred to as a "Case Manager"— on approximately July 4, 2020. His consent to join as a plaintiff is attached as **Exhibit A**.

6. During his employment with Defendant Special Counsel, Inc., ("Defendant SC" or "SC") and Defendant Innovative Emergency Management, Inc., ("Defendant IEM" or "IEM") (collectively "Defendants"), Plaintiff Bache was not fully and/or properly paid for all compensable hours worked because Defendants did not properly calculate his regular rate of pay, resulting in unpaid overtime wages.

7. At all times material to this Complaint, Defendant SC was a foreign for-profit corporation that operated as a full-service provider of legal consulting, attorney recruiting, legal talent, legal technology, and eDiscovery solutions, among other services.[1]

8. Defendant SC is headquartered at 10151 Deerwood Park Blvd, Building 200, Suite 400, Jacksonville, Florida 32256 (Duval County), and can be served through its registered agent, CT Corporation System, at 4400 Easton Commons Way, Suite 125, Columbus, OH 43219.

---

[1] *See* https://www.specialcounsel.com/about-us/, last visited on October 8, 2020.

9. At all times material to this Complaint, Defendant IEM was a foreign for profit corporation that, per its website, would work with government agencies and private sector organizations to improve disaster preparedness, response, recovery and strengthen homeland defense, counter terrorism, public health, cybersecurity, and public agency performance, among other services. [2]

10. Defendant IEM is headquartered at 2801 Slater Road, Suite 110, Morrisville, North Carolina 27560 (Wake County), and can be served through its registered agent Incorp Services, Inc. at 9435 Waterstone Boulevard Suite 140, Cincinnati, OH 45249.

## DEFENDANT'S BUSINESS PRACTICES

11. Prior to this lawsuit, Defendant SC adhered throughout its operations to the common business practice of requiring non-exempt employees in their Attorney Advisor positions, like Plaintiff Bache ("Named Plaintiff") and those similarly situated to him ("Putative Plaintiffs"), to record their hours through timesheets controlled by Defendant SC and actively monitored by Defendant IEM.

12. Despite being considered an Attorney Advisor by the company, Plaintiff Bache's work program lists him as a "Case Manager."

13. Multiple paralegals employed by Defendant SC maintained the title of "Case Manager" as well.

14. Named Plaintiff applied to work for Defendant SC in approximately February and was in touch with IEM and SC between February and his actual date of hire on June 4, 2020.

15. Plaintiff Bache began working for Defendant SC on June 4, 2020 to assume an Attorney Advisor position. Because of an existing contract between Defendant SC and Defendant IEM, Named Plaintiff and Putative Plaintiffs work directly with both Defendants.

16. As a result of an existing contract between Defendant IEM and the U.S. Small Business Administration (SBA), Named Plaintiff's and Putative Plaintiffs' work for IEM was in support of the SBA's execution of its additional Economic Injury Disaster Loan (EIDL) funds

---

[2] *See*, https://iem.com/, last visited on October 8, 2020.

3

project to provide financial assistance to small businesses or private, non-profit organizations that have been impacted as a result of the COVID-19 pandemic.

17. By working for Defendant SC and—as a direct result of an existing contract between Defendants—assisting Defendant IEM's contract with the SBA in furtherance of the EIDL project, Named Plaintiff and the Putative Plaintiffs were considered to be working for both Defendants.

18. Named Plaintiff and Putative Plaintiffs were to send their requested work hours for approval to Defendant IEM. After working said hours, Named Plaintiff and Putative Plaintiffs would receive their pay from Defendant SC.

19. If Named Plaintiff were to ever need time off or a change in his schedule, he would contact his Project Manager, Trish Boersma, who was employed by Defendant IEM.

20. Named Plaintiff works remotely and logs onto SBA's software to begin work, which is an accordance with his IEM approved schedule of hours to be worked.

21. Named Plaintiff was introduced to the SBA EIDL project through another one of his IEM Project Manager's, Hal Adams Jr., through an email received on approximately April 30, 2020.

22. To begin his workday, Named Plaintiff logs into his SBA account, which is a virtual desktop through a Microsoft portal. He then clocks in on an IEM timesheet that is referred to as "Tsheets." However, if he has a problem with Tsheets he has to contact Defendant SC to resolve the issue. After clocking in, Named Plaintiff records his time logged in and time expected to leave in an SBA excel spreadsheet. Afterwards, Named Plaintiff sends an email to his SBA team lead with his clock-in and clock-out times.

23. After Name Plaintiff clocks-in, logs-in, and informs his employers of this, he logs into a loan processing program called "Rapid," which is a Microsoft SharePoint program under the SBA. The Rapid database populates loan applicants' information who have previously applied to the SBA for a loan pursuant to the EIDL. Named Plaintiff will call these applicants to inquire into their interest in the loans and will attempt to fix their applications in accordance with SBA standards, in order to comply with criteria provided by the SBA. Afterwards, once Named Plaintiff

has ensured that the respective applications are in accord with SBA standards, the SBA will ultimately accept or reject the loans.

24. Named Plaintiff had been previously reprimanded by Defendant IEM when IEM noticed his timesheet reflected two (2) breaks within one (1) workday, evidencing IEM's observance and usage of Defendant SC's timesheets.

25. Named Plaintiff's compensation consisted of an hourly rate of $22.00 per hour, determined by Defendant SC, plus a potential bonus pursuant to an IEM implemented incentive program encouraging employees to work a certain number of hours in order to receive the bonus, which would ultimately be paid by Defendant SC.

26. At all times relevant to this Complaint, Named Plaintiff could be terminated by either Defendant IEM or Defendant SC.

27. Despite maintaining the job title of "Attorney Advisor," or sometimes "Case Manager," Named Plaintiff and Putative Plaintiffs perform the duties of a loan officer and Named Plaintiff has even been listed as a "loan officer" and "loan specialist" by Defendants.

28. Named Plaintiff and Putative Plaintiffs have no autonomy and cannot perform any work outside of the parameters provided to them by Defendants.

29. Named Plaintiff and Putative Plaintiffs do not provide legal advice to clients nor do they engage in any legal analysis in the performance of their work duties.

30. Named Plaintiff and Putative Plaintiffs engage in the duties of contacting clients or potential clients regarding review of their loan applications, credit and loan files in furtherance of the SBA's EIDL project, which consisted of providing low interest disaster loans to businesses of all sizes, private non-profit organizations, homeowners, and renters to repair or replace real estate, personal property, machinery & equipment, inventory and business assets that have been damaged or destroyed in a declared disaster.

31. Named Plaintiff engages in the same work duties as performed by the paralegals employed by Defendants' and has observed the paralegals doing such similar work duties as himself.

32. Named Plaintiff was originally authorized to work up to eighty-four (84) hours in one workweek, inclusive of weekends.

33. Named Plaintiff did not receive one and one-half times (1.5) his regular hourly rate for hours worked in excess of forty (40) in a workweek.

34. When Named Plaintiff brought the issue of not receiving 1.5 times his regular hourly rate for hours worked in excess of forty (40) in a workweek, he was told by Defendants that attorneys are not subject to FLSA requirements.

35. Defendants maintained this assertion despite the fact that Named Plaintiff and other attorneys within his position are not actually engaged in the practice of law and that Named Plaintiff and those similarly situated made less than $100,000 per year since 2018.

36. Named Plaintiff and those similarly situated, do not make $107,432.00 or more, which would include at least $684 per week paid on a salary or fee basis since January 1, 2019.

37. Named Plaintiff and those similarly situated do not protect, enforce, nor defend others in the exercise of their legal rights and duties nor do they counsel, advise, and assist them in relation thereto.

38. Defendants do not employ the Named Plaintiff and those similarly situated, for work with the primary duty that requires advanced knowledge, defined as work which is predominantly intellectual in character and which includes work requiring the consistent exercise of discretion and judgment.

39. Defendants do not employ the Named Plaintiff and those similarly situated, for work with the primary duty that requires advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction.

40. Defendants' violations of the FLSA and the Ohio Wage Acts are willful because they did not show a good faith basis as to why they classified the "Attorney Advisor" or "Case Manager," position, which effectively operates as a loan officer and or paralegal, as FLSA exempt.

41. Named Plaintiff and those similarly situated, do not customarily and regularly direct the work of two or more other employees.

42. Named Plaintiff and those similarly situated, are only paid for the hours they worked and were not guaranteed to make $684 per week in each week they performed some work; rather they were hourly employees who Defendant paid like non-exempt employees except that it would not pay them 1.5 times their regular rate for all hour worked over 40 in a workweek.

43. Defendant is in possession of Named Plaintiff's and the Putative Plaintiffs', employment records.

44. Based on Defendants' common business practice before this lawsuit, Named Plaintiff's and those similarly situated' s compensation did not include their required 1.5 times their regular hourly rate for all hours worked in excess of 40 in a workweek despite Named Plaintiff and Putative Plaintiffs regularly doing so.

45. Defendants' common business practice before this lawsuit was to only pay Named Plaintiff and those similarly situated in Attorney Advisor or Case Manager positions at only their regular hourly rate regardless of the number of hours worked in any given workweek.

46. Defendants did not calculate, as part of the Named Plaintiff's and those similarly situated' s workweek, the time they spent on the tasks integral and indispensable to their principal activity that were in excess of 40 hours in a workweek at 1.5 times their regular hourly rate, which is in violation of federal and state wage laws.

47. Further, when the addition of the unpaid time is added to the Named Plaintiff's and those similarly situated' s  hours for the workweek, Defendants willfully failed to pay Named Plaintiff and those similarly situated for the additional time at 1.5 their regular rate in violation of federal and state wage laws.

48. At all times material to this Complaint, Defendant knew and recorded the amount of time the Named Plaintiff and those similarly situated spent on tasks that were integral and indispensable to their principal activity in excess of 40 hours in a workweek, but willfully failed to pay them at the appropriate rate in violation of federal and state wage laws.

49. The Named Plaintiff and those similarly situated are engaged in a business enterprise when they perform their job duties and when they perform tasks that are integral and indispensable to their principal activity pre-shift and post-shift.

7

50. The Named Plaintiff and those similarly situated are hourly employees.

51. Defendant employs both "exempt" and "non-exempt" employees and have incorrectly characterized the Named Plaintiff and Putative Plaintiffs as "exempt."

52. The Named Plaintiff and those similarly situated are not in a job classification and do not perform job duties which are exempt from the mandate under the FLSA and/or the Ohio Wage Act to pay for all hours worked and/or overtime.

53. As a direct and proximate result of Defendant's unlawful conduct, the Named Plaintiff and those similarly situated have suffered and will continue to suffer a loss of income.

54. For the Named Plaintiff and those similarly situated, the aggregate number of hours worked and not compensated, and the overtime denied to them represents dollars that could be expended on meals, refreshments, travel expenses and/or consumer purchases or could be saved.

55. For the Named Plaintiff and those similarly situated, the aggregate amount of overtime denied to them represents time Defendant has required they dedicate to performing tasks integral and indispensable to their principal activity, such as contacting applicants or potential applicants regarding review of their loan applications, credit and loan files in furtherance of the SBA's EIDL project, which consisted of providing low interest disaster loans to businesses of all sizes, private non-profit organizations, homeowners, and renters to repair or replace real estate, personal property, machinery & equipment, inventory and business assets that have been damaged or destroyed in a declared disaster.

## COLLECTIVE ACTION AND CLASS ALLEGATIONS

56. Named Plaintiff brings this action on behalf of himself and all others similarly situated as a collective action for unpaid wages and overtime under the FLSA, 29 U.S.C. §216(b).

57. The collective class, or Opt-In Class, which Named Plaintiff seeks to represent is composed of and defined as follows ["FLSA Collective Class"]:

> All current or former Attorney Advisors or Case Managers employed by Special Counsel, Inc. and Innovative Emergency Management, Inc. during the past three years.

58. Named Plaintiff brings the Ohio Wage Act and OPPA claims pursuant to Federal Rule of Civil Procedure 23 as a class action under Ohio law on behalf of the following class ["Ohio Rule 23 Class"]:

> All current or former Attorney Advisors or Case Managers employed by Special Counsel, Inc. and Innovative Emergency Management, Inc. during the past three years who worked within the State of Ohio.

59. The FLSA Collective Class and the Ohio Rule 23 Class, as defined above, are so numerous that joinder of all members is impracticable.

60. Named Plaintiff is a member of the FLSA Collective Class and the Ohio Rule 23 Class and his claims are typical of the claims of the members of the FLSA Collective Class and the Ohio Rule 23 Class as defined; indeed, apart from the hourly rate and number of days worked and the precise tasks in Defendant's departments, Named Plaintiff and the FLSA Collective Class and the Ohio Rule 23 Class are similarly situated in all material respects, including; the nature of the tasks that are integral and indispensable to their principal work activity and the uniform policies and practices of Defendant in not properly compensating for the time spent working.

61. Named Plaintiff will fairly and adequately represent the FLSA Collective Class and the Ohio Rule 23 Class and the interests of all members of the FLSA Collective Class and the Ohio Rule 23 Class.

62. Named Plaintiff has no interest that is antagonistic to or in conflict with those interests that he has undertaken to represent on behalf of the FLSA Collective Class and the Ohio Rule 23 Class as Class Representatives; instead, their interests perfectly coincide with those of individuals similarly situated in all material respects.

63. Named Plaintiff retained competent and experienced class action counsel who can effectively represent the interests of the entire FLSA Collective Class and the Ohio Rule 23 Class.

64. Questions of law and fact that are common to the FLSA Collective Class and the Ohio Rule 23 Class predominate over any individual questions, specifically whether Defendants violated the FLSA and/or the Ohio Wage Act by failing to pay the appropriate overtime rate at one and one-half (1 ½) times the FLSA Collective Class' and the Ohio Rule 23 Class' regular rate for hours worked in excess of forty (40) in a given workweek.

65. In both the FLSA Collective Class and the Ohio Rule 23 Class there is a community of interest among the class members in obtaining appropriate relief, damages, and compensation for costs and fees incurred herein.

66. A collective action for the federal overtime claim and a Rule 23 class action for the Ohio overtime claim and OPPA claim are superior to other litigation methods (including individual litigation) for the fair and efficient adjudication of Named Plaintiff's and Putative Plaintiffs' claims as presented by this Complaint and will prevent undue financial, administrative, and procedural burdens on the parties and the Court.

67. Named Plaintiff and his counsel are not aware of any pending Ohio litigation on behalf of the FLSA Collective Class and the Ohio Rule 23 Class, as defined herein, or individual Class members related to these claims.

68. Because the damages sustained by individual members of the Class are modest compared to the substantial resources of Defendant and due to the costs of individual litigation, it will be impracticable for Class members to pursue individual litigation against Defendant in order to vindicate their rights, and individual actions would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant with respect to its employees.

69. Named Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a FLSA Collective Class or a Rule 23 Class.

## COUNT I:
## FLSA Collective Action

70. All previous paragraphs are incorporated as though fully set forth herein.

71. By not paying for all hours worked and for not paying one-and-one-half times the regular hourly rate to Named Plaintiff and the putative FLSA Collection Class for hours worked in excess of forty hours each week when the time spent performing tasks that are integral and indispensable to their principal activity, Defendant has violated the FLSA.

72. In violating the FLSA, Defendant acted willfully and with reckless disregard of clearly applicable FLSA provisions.

## COUNT II:
### Ohio Rule 23 Class Action

73. All previous paragraphs are incorporated as though fully set forth herein.

74. By not paying for all hours worked and for not paying one-and-one-half times the regular hourly rate to Named Plaintiff and the Ohio Rule 23 Class for hours worked in excess of forty hours each week when the time spent performing tasks that are integral and indispensable to their principal activity, Defendant has violated the Ohio Wage Act.

75. In violating the Ohio Wage Act and the OPPA, Defendants acted willfully and with reckless disregard of clearly applicable Ohio Wage Act and OPPA provisions.

## COUNT III
### (Ohio Rule 23 Class - Violations of the Ohio Prompt Pay Act, R.C. 4113.15)

76. All previous paragraphs are incorporated as though fully set forth herein.

77. During all relevant times, Defendants have been an entity covered by the OPPA and Named Plaintiff and the Putative Ohio Rule 23 Class Members have been employed by Defendants within the meaning of the OPPA.

78. The OPPA requires that the Defendants pay Named Plaintiff and the Putative Ohio Rule 23 Class Members all wages, including unpaid overtime, on or before the first day of each month, for wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned by them during the last half of the preceding calendar month. R.C. § 4113.15(A).

79. During all relevant times to this action, Named Plaintiff and the Putative Ohio Rule 23 Class Members were not paid all wages, including overtime wages at one and one-half times their regular rates within thirty (30) days of performing the work.

80. The wages of Named Plaintiff and the Putative Ohio Rule 23 Class Members remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

81. In violating the OPPA, Defendant acted willfully, without a good faith basis and with reckless disregard of clearly applicable Ohio law.

## PRAYER FOR RELIEF

**WHEREFORE**, Named Plaintiff and the Putative Plaintiffs are entitled to and pray for the following relief:

- A. An order permitting this litigation to proceed as a FLSA representative action and an Ohio state law Rule 23 class action;

- B. Prompt notice, pursuant to 29 U.S.C. §216(b), to all FLSA Collective Class members that this litigation is pending and that they have the right to "opt in" to this litigation;

- C. With respect to Named Plaintiff and each Putative Plaintiff, compensatory damages in an amount equal to the difference between the time-and-a-half payments required under the FLSA and the Ohio Wage Act and the amount of compensation actually paid by Defendants;

- D. Liquidated damages to the fullest extent permitted under federal and state law;

- E. Costs and attorneys' fees to the fullest extent permitted under federal and state law;

- F. Pre-judgment and post-judgment interest to the fullest extent permitted under federal and state law; and,

- G. Such other relief as the Court deems fair and equitable.

Dated: November 17, 2020

Respectfully Submitted,

**BARKAN MEIZLISH DEROSE WENTZ MCINERNEY PEIFER, LLP**

 /s/*Robert E. DeRose*
Robert E. DeRose (OH Bar No. 0055214)
4200 Regent Street, Suite 210
Columbus, OH 43219
Phone: (614) 221-4221
Facsimile: (614) 744-2300
bderose@barkanmeizlish.com

*Counsel for Plaintiffs*